UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
SHELDON MILLER, on Behalf of Himself    :    Civil Action No.  08cv03756
and All Others Similarly Situated,      :
                                        :    CLASS ACTION
                    Plaintiff,          :
                                        :    COMPLAINT FOR VIOLATION OF THE
        vs.                             :    FEDERAL SECURITIES LAWS
                                        :
CALAMOS GLOBAL DYNAMIC INCOME           :
FUND, WACHOVIA CAPITAL MARKETS,         :
LLC and CITIGROUP GLOBAL MARKETS        :
INC.,                                   :
                                        :
                    Defendants.         :
                                        :
———————————————————— x    DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who acquired the Auction Rate Cumulative Preferred Shares ("ARPS") of the Calamos Global Dynamic Income Fund ("Calamos Fund" or the "Fund") pursuant and/or traceable to a false and misleading registration statement and prospectus incorporated therein (collectively, the "Registration Statement") issued in connection with the Company's September 2007 offering (the "Offering"). This action asserts strict liability claims under the Securities Act of 1933 ("1933 Act") against defendants.

2.      Defendant Calamos Fund is a closed-end management investment company organized under the laws of the State of Delaware. The Fund's investment objective is to generate a high level of current income, with a second objective of capital appreciation.

3.      Defendants consummated the Offering pursuant to the false and misleading Registration Statement, selling 2,800 shares each of the ARPS Series M, T, W, TH and F at $25,000 per share, for proceeds of approximately $350 million.

4.      The ARPS were misrepresented, marketed and sold as short-term investments and cash equivalents. The investments are debt-instruments that have interest rates which reset at regular intervals, usually every week, by way of an auction run by the brokerage firm that originally sold the ARPS.

5.      As described on the Calamos web site: The dividend rate on the ARPS is reset through the auction process every 7 days or 28 days, depending on the terms of the securities. The auctions are Dutch style, a process in which investors, without knowing what others are bidding, offer to buy a maximum amount of preferred shares at the minimum dividend rate they are willing to accept. If there are enough bids to cover all the shares up for auction, the investors willing to accept the lowest rates buy shares. The new reset rate, which will be the same for all investors chosen in the auction to purchase shares, is the highest rate offered among the winning bidders.

6.      In the past few months, the market for auction rate securities has collapsed, as all of the major broker-dealers have announced that they will no longer purchase auction rate securities for their own accounts to ensure that the auctions do not fail. In the past month, thousands of auctions run by the broker-dealers failed. As a result, over $350 billion in auction rate securities that were once offered as "cash equivalents" are now illiquid, resulting in economic losses and severe hardships for investors.

7.      The true facts which were omitted from the Registration Statement were:

(a)     The purported "auctions" used by Calamos Fund to get the dividend rates were not *bona fide* auctions at all, but rather a mechanism to maintain the illusion of an efficient and liquid market for the ARPS so that the Calamos Fund could continue to earn fees from the so-called auctions and from the ongoing stabilizing of the market because of the lack of buyer demand. In fact this practice had been going on for a very long time;

(b)     The default interest rates set as a consequence of a failed auction is less than the interest rate paid when auctions of certain competing municipal auction rate securities ("MARS") offered directly by municipal issuers fail;

(c)     The ARPS suffer from an additional disadvantage compared to MARS because the ARPS are securities which exist in perpetuity until such time as the Fund calls them due while MARS have a set due date; and

(d)     The default interest rate as set would cause the ARPS to trade at a discount to their par value if, and when, the auctions began to fail.

## JURISDICTION AND VENUE

8.      The claims alleged herein arise under §§11 and 12(a)(2) of the 1933 Act, 15 U.S.C. §§77k and 77l(a)(2). Jurisdiction is conferred by §22 of the 1933 Act and venue is proper pursuant to §22 of the 1933 Act.

9.     In connection with the acts and conduct alleged in this Complaint, defendants directly or indirectly used the means and instrumentalities of interstate commerce.

## PARTIES

10.    Plaintiff Sheldon Miller acquired ARPS of Calamos Fund pursuant or traceable to the Offering and has been damaged thereby.

11.    Defendant Calamos Fund is a closed-end management investment company organized under the laws of the State of Delaware. The fund is registered under the Investment Company Act of 1940, 15 U.S.C. §§80a-1-80a-64, and shares of the Calamos Fund's common stock are publicly traded on the NYSE under the symbol CHW. Calamos Fund's principal place of business is 2020 Calamos Court, Naperville, Illinois 60563.

12.    Defendant Wachovia Capital Markets, LLC ("Wachovia Capital") was an underwriter and a senior co-manager of the Offering.

13.    Defendant Citigroup Global Markets Inc. ("Citigroup") was an underwriter and a senior co-manager of the Offering.

14.    Pursuant to the 1933 Act, the defendants referenced in ¶¶12-13 above are referred to herein as the "Underwriter Defendants."

15.    Defendants are ***strictly liable*** for the false and misleading statements in the Registration Statement on the claims arising under Sections 11 and 12(a)(2) of the Securities Act. In connection with the IPO, the defendants drafted and disseminated the Registration Statement and were paid fees in connection therewith. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## CLASS ACTION ALLEGATIONS

16.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who acquired shares of Calamos

- 3 -

Fund's ARPS pursuant and/or traceable to the September 17, 2007 Registration Statement and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Calamos Fund, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

17.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Fund or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. The Fund has more than 14,000 ARPS outstanding.

18.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

19.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

20.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: whether defendants violated the 1933 Act; whether the Registration Statement misrepresented and/or omitted material facts about the business and/or operations of the Fund; and to what extent the members of the Class have sustained damages and the proper measure of damages.

- 4 -

21.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

22.    The Fund was organized under the laws of the State of Delaware on April 10, 2007 and registered under the Investment Company Act of 1940. On June 29, 2007, the Fund conducted an initial public offering ("IPO") of 56,000,000 shares of common stock at $15.00 per share and began operations.

23.    On or about September 12, 2007, the Fund filed with the SEC a Form N-2/A Registration Statement for the ARPS Offering and on or about September 17, 2007, filed its Prospectus for the Offering, which forms part of the Registration Statement and $350 million of ARPS were sold to the public at $25,000 per share.

24.    The Registration Statement contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations.

25.    The Registration Statement and Prospectus included the following statement:

> **Auction Risk.** You may not be able to sell your Preferred Shares at an auction if the auction fails; that is if there are more Preferred Shares offered for sale that there are buyers for those shares.

26.    The above-referenced statement is materially false and/or misleading because it states that the purchaser *may* not be able to sell his ARPS when in fact he will definitely not be able to his ARPS if the auction fails.

- 5 -

27.     Furthermore, the Registration Statement and Prospectus further failed to disclose the

likelihood of such an auction failure. The Prospectus represented the following with respect to the

auctions, stating in pertinent part as follows:

> The relative buying and selling interest of market participants in your Preferred
> Shares and in the auction rate securities market as a whole will vary over time, and
> such variations may be affected by, among other things, news relating to the Fund,
> the attractiveness of alternative investments, the perceived risk of owning the
> security (whether related to credit, liquidity or any other risk), the tax treatment
> accorded the instruments, the accounting treatment accorded Preferred Shares,
> including recent clarifications of U.S. generally accepted accounting principles
> relating to the treatment of auction rate securities, reactions to regulatory actions or
> press reports, financial reporting cycles and market sentiment generally. Shifts of
> demand in response to any one or simultaneous particular events cannot be predicted
> and may be short-lived or exist for longer periods.

28.     The above-referenced statement was an inaccurate statement of material fact because

it failed to disclose the true risk of an auction failure. The likelihood of failed auctions was

significant because the auctions were not real auctions. For a long time the broker-dealers running

the auctions had prevented auction failures by stepping in and purchasing the ARPS when not

enough buyers appeared and placed bids at the auctions.

29.     The broker-dealers themselves often stepped in to purchase the instruments for their

own portfolios to prevent an auction failure and to maintain the illusion of an efficient market and

liquidity. The market did not have enough buyer demand to support itself and has been dependent

on stabilization from the banks for a very long time.

30.     Furthermore, the Registration Statement failed to disclose that purchasers of the

ARPS would fare considerably worse in the event of an auction failure than purchasers of MARS.

This is true because the penalty dividend rates set as a consequence of a failed auction on the Fund is

less than the dividend rate paid when auctions of MARS fail. As a consequence, ARPS purchasers

were unaware that they were receiving little or no premium for purchasing a highly illiquid security.

31.     Under the rules and regulations governing the preparation of the Registration
Statement, the Registration Statement should have disclosed the following facts but did not:

(a)     Although sold as cash equivalents, there was a significant likelihood of
repeated auction failures and ARPS purchasers would have no way of selling there securities; and

(b)     They were purchasing highly illiquid securities without being compensated for
this illiquidity.

32.     Currently, approximately 80% of all auctions are failing.  While issuers have an
incentive to redeem MARS because of their high interest rates, purchasers of the ARPS are mired in
their investment because with the dividend rate resulting from the failed auctions is so low issuers
have no incentive to redeem them.

33.     As *Bloomberg.com* reported on February 26, 2007, Bill Gross manager of the world's
largest bond fund has said "auction-rate preferred securities . . . are the latest 'old maid' card to be
foisted on investors."  The market for these securities has ceased to exist.

## COUNT I

### Violations of Section 11 of the 1933 Act
### Against All Defendants

34.     Plaintiff repeats and realleges each and every allegation contained above.

35.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of
the Class, against all defendants.

36.     The Registration Statement was false and misleading, contained untrue statements of
material facts, omitted to state other facts necessary to make the statements made not misleading,
and omitted to state material facts required to be stated therein.

37.     The Fund is the registrant for the Offering.  As issuer of the shares, the Fund is
strictly liable to plaintiff and the Class for the misstatements and omissions.

- 7 -

38.     The Fund was responsible for the contents and dissemination of the Registration Statement and authorized the signing of the Registration Statement. The Fund did not make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

39.     By reason of the conduct herein alleged, the Fund violated §11 of the 1933 Act.

40.     The Underwriter Defendants sold the ARPS pursuant to the false and misleading Registration Statement.

41.     Plaintiff acquired Fund shares pursuant and/or traceable to the Registration Statement Offering.

42.     Plaintiff and the Class have sustained damages. At the time of their purchases of the ARPS, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to February 2008. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### Violations of Section 12(a)(2) of the 1933 Act
### Against All Defendants

43.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this claim, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence under the 1933 Act.

- 8 -

44.     By means of the defective Prospectus, defendants assisted in the sale of shares of the Fund's securities to plaintiff and other members of the Class.

45.     The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed plaintiff and the other members of the Class who purchased ARPS pursuant to the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Registration Statement as set forth above.

46.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time she acquired the Fund's securities.

47.     By reason of the conduct alleged herein, defendants violated §12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased ARPS pursuant to the Prospectus sustained substantial damages in connection with their purchases of the ARPS. Accordingly, plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as a Class representative;

- 9 -

B.   Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.   Awarding rescission pursuant to Section 12(b) of the Securities Act on Count II;

D.   Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

E.   Awarding rescission or a rescissory measure of damages; and

F.   Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: April 21, 2008

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

_____
                SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

- 10 -

ABRAHAM FRUCHTER
  & TWERSKY LLP
JACK G. FRUCHTER
JEFFREY S. ABRAHAM
One Pennsylvania Plaza, Suite 2805
New York, NY 10119
Telephone: 212/279-5050
212/279-3655 (fax)

Attorneys for Plaintiff

 **MAIL** Classic

Print – Close Window

## CERTIFICATION OF SHELDON MILLER

### IN SUPPORT OF CLASS ACTION COMPLAINT

Sheldon Miller ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized the filing of a similar complaint or to otherwise add my name as a lead plaintiff in these proceedings.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the proposed Class Period, plaintiff executed the following transactions in the securities of Calamos Global Dynamic Income Fund. See Attachment A:

5. In the past three years, plaintiff has not served, nor sought to serve, as a representative party on behalf of a class in an action filed under the federal securities laws.

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of April, 2008.

SHELDON MILLER

### ATTACHMENT A

| Date | Action | Amount | Price |
|---|---|---|---|
| December 18, 2007 | Buy Calamos Global Dynamic Income Fund Preferred Shares | 1 | $25,000 |